Good morning, Your Honor. My name is Kevin Brindell, and I represent the defendant appellant Juan Barrera-Gonzalez. I'd like to reserve a minute for rebuttal at the end. This case presents, I think, one overarching issue, although of course there's two separate sub-issues. The overarching issue, I think, is what evidence the government must present to prove a contested sentencing enhancement by clearing convincing evidence. And that issue arose in two contexts. One, the identification, was the alleged predicate 16-level enhancement actually a conviction of this defendant, Juan Barrera-Gonzalez? And the second was if it was determined that it was, whether or not it was a drug trafficking offense. Taking the ID issue first, obviously our contention was that there was not sufficient evidence that it was Mr. Barrera's, that it wasn't him. The government cites two cases, this Court's previous decisions in Romero-Rendon and Marin-Cuevas, to support its failure to adduce any evidence at all. They seem to think that they should have been able to, as they did, do nothing and rely simply on the PSR. Well, they can. They can when it's uncontroverted. Well, you didn't controvert it. I believe we did. You didn't controvert it. Because if, and the source of that rule, of course, is we're You just said you, all I recall is you just objected to it. You didn't submit a declaration saying it's not me. I'm not the guy. I'm not that guy that's listed on that FBI report. That's accurate, Your Honor. We did not. The source of the rule, of course, regarding that the defendant must contest or controvert the PSR in order that the government can't rely is this Court's decision in Romero-Rendon. What makes this, our situation, quite different from that in Romero-Rendon is if we look at page 1163 of Romero-Rendon, we see this Court there stated Romero never questioned the factual accuracy of the PSR nor the classification of his previous conviction as a crime of violence. Those are the exact two things that we did do here that Romero-Rendon did not do. That's what made the Romero-Rendon situation an uncontroverted PSR. If I'm not mistaken, and correct me if I'm wrong, but in the underlying Superior Court complaint, it's the people of the State of California versus Bernardo Moreno-Gonzalez. Correct. And then there's just a slew of AKAs. Thirty-three. And one of them is Juan Barrera-Gonzalez. That's accurate, Your Honor. And you didn't even suggest that there was any inaccuracy there. Inaccuracy. I mean, you didn't even deal with this, with the fact that his alias is listed in this complaint. Actually, we did. The argument that was, well, as we pointed out, of course, we didn't receive that document until the morning of the sentencing hearing. So our first opportunity to do so was at the sentencing hearing itself. And when I got there, that's exactly what I argued to Judge Gonzalez, the District Court judge. I said the fact that Juan Barrera-Gonzalez, this defendant's name, appears as an AKA in Bernardo Moreno-Gonzalez's predicate offense could mean one of two things. It could mean that Bernardo Moreno-Gonzalez was Juan Barrera-Gonzalez and using an AKA. Or it could mean that there is another person, Bernardo Moreno-Gonzalez, using Juan Barrera-Gonzalez's name. In other words, there could be one person or there could be two. And by the fact that he has this name as an AKA, that Bernardo Moreno-Gonzalez has Juan Barrera-Gonzalez as an AKA, doesn't cut either way. We don't know. It admits of two possibilities. And this is a point we made in our briefs. We made the exact same point to Judge Gonzalez. The fact that the names are listed as an AKA admits of two possibilities. They have the burden of proof by clearing and convincing evidence. And what did they do to show the judge which of the two equal possibilities was true? And the point is they did nothing. They brought no evidence at all. The government brought zero. They filed no papers. They filed no response to our objections. And they came to court with no evidence. And it was the court who had to reach out and ask the probation officer, please let me see these documents. Another thing, if I may, Your Honor, that distinguishes this case from Romero-Rendon, on that same page of the opinion, page 1163, the court notes there that the PSR in that case was far more detailed than the one in this case. The court there says the PSR listed the source of the information as computer checks from FBI, CII, Bureau of Prisons, INS, and other agencies. That's page 1163 of Romero-Rendon. The PSR in this case did no such thing. The PSR in this case did not list the source, did not say why the probation officer was claiming that this was Juan Barrera-Gonzalez's conviction. It did not even alert the judge. In the PSR it says sources of information, the law enforcement and court agencies in southern, central, and eastern districts of California. Right. As well as the FBI, CII, NCIC, and California Department of Motor Vehicles. I'm sorry, what I meant to say was it doesn't list the heart of the allegation, which came to be that there was a fingerprint identification. And the second thing, the PSR in this case did nothing to alert the court that there was a different name, that it was a different name. The PSR has a whole host of pages. Yeah, look at that. I mean, what about the second, you know, the first page? It's got all, you know, half a page, single page. Right, and if you note, if you compare those to the complaint in the Bernardo Moreno-Gonzalez case, you can see that that's the source. In other words, they put the cart before the horse. The PSR in this case lists those names as AKAs, when obviously those AKAs were derived from the fact that they were listed as AKAs on the Bernardo Moreno-Gonzalez case. How do we know that? Because one can compare them and see that that's the source. And so again, this purported fingerprint identification really becomes the linchpin. Could be the FBI printout sheet or the NCIC printout sheet or the sheet from the Department of California. Those all give aliases from my recollection. The supposed rap sheet. And I think the supposed rap sheet in this case probably did. Interestingly, I know it's not in the record below, and the government tried to make it a part of the record on appeal, and it was stricken. But even if it were, one would look at that rap sheet that they wanted the court to look at and see that it's in two parts, two very distinct parts. The first part saying it was based on fingerprints. The second part not saying it was based on fingerprints. And this conviction appears in the second part. So even looking at that rap sheet, there's no indication that it was based on fingerprints. So all you did here was just object to the probation report's identity. I don't think that's an accurate statement, Your Honor, respectfully. What we did, if I could take a step back, there's something that regretfully I don't think I made clear in our statement of facts. The defendant in this case, Mr. Brera Gonzalez, is mentally ill. He received a two-level downward departure for mental incompetency from Judge Gonzalez. There were three different psychiatric reports that were submitted in our sensing papers that Judge Gonzalez was able to rely on in granting them. This is not a case in which the defendant is the best source of information. He was determined by psychologists and psychiatrists to be suffering from delusions of clairvoyance, telepathy, distortions of reality, et cetera. Obviously, I have only known him a short while, and I don't know what he may or may not have been doing in the 80s and 90s. So the best source of information for a defense counsel in such a situation is let me see the evidence. And I asked the probation officer for the evidence, and she said not without a court order. And so in our objections, I said I'd like to see the evidence. And as I said, it wasn't provided except by facts the morning of the hearing. The government seems to think that the hearing was at 4 o'clock, gave me plenty of time. Of course, Mr. Rakey, I know, is an appellate lawyer. He doesn't have six court appearances per day in the Southern District, as I do, and did that day. The point being, we did more – this was a controverted PSR. And the court was not – and we pointed out the difference between Romero-Rendon, where the defendant never questioned the factual accuracy of the PSR, nor the classification of the previous conviction. And we did both those things. We did it in writing by saying we object, and we asked for the evidence. And then I got it the morning by facts, and I walked into the hearing, and I said, Your Honor, here are all the things that are wrong. The name doesn't match. Your Honor didn't know that by looking at the PSR. There is a fingerprint card that they could have compared the fingerprints to. We've just heard in other cases, in 1326s, the government contracts with a fingerprint expert. They had John Torres, the same expert, take the fingerprints of Juan Barrera-Gonzalez. They had the fingerprint card of Bernardo Moreno-Gonzalez. They had all the evidence they needed. They just needed to take the extra step of having somebody compare them, and they didn't do that. When they knew they had the burden by clear and convincing evidence, and they knew we were controverting it. To say that I only filed an objection saying, with my arms folded, and saying prove it, and I'm relying on our Fifth Amendment rights to remain silent, I don't think is accurate in this case. I think that's what happened in Romero-Rendon. I think that's an accurate statement. And I think that's also what happened in Marin-Cuevas, because we know from Marin-Cuevas, the court there, this court there stated the defendant did not challenge the reliability of computerized databases. That's from Marin-Cuevas, page 894, note 6. And the court in Marin-Cuevas further goes on to say the defendant only complained that the documents, the underlying documents, had not been given to the court. And, of course, here they were, partially because we were able to come and say to the court. You suggested to Judge Gonzales at the hearing that he had some psychological problems and you can't be certain about whatever name he used. He might have used all these funny names and, you know, there's just too much uncertainty here. Was that the thrust of your argument? I see him out of time. I didn't make that argument, Your Honor, because it was never raised by the court and it was never raised by the government below. I'm asking you whether you made that argument. You suggested that to me just a minute ago. I suggested it to you now because the government has made that argument in its papers for the first time on appeal to sort of say that the defense should have reached out, they're in the best position, and to say something, as Your Honor suggested, like affirmatively a declaration or something. No one suggested that to me below, not the district court and not the government counsel. So, no, I did not, Your Honor, I did not. I'm not even suggesting a declaration just other than a statement before the court that, look, look at this psychological situation here. He can't trust anything because he's, you know, he's got all kinds of difficulties. And so, you know, the government really needs to establish that he is who they purport him to be. I certainly made a, and the record was obviously very complete with regard to his mental illness because Judge Gonzalez gave the downward departure. And the government never filed an opposition to that, by the way. But I don't think I necessarily linked them up with saying this is a special case, therefore they need to prove it more. And I don't think that's actually would have been proper for me to say that. Because they have the burden of proof, and we did not. They had it by clear and convincing evidence, and we did not. I think his mental illness is important for the court to understand now because they've made that allegation, but they didn't make it below. And I wanted to point out one other thing, if I may. I see I'm out of time, but if I could take 30 seconds to make this point. Because I said I received these documents the morning of the hearing, in further preparation, I was looking at them last week, and I noticed there's another discrepancy besides the name. If you look at the felony sentencing minutes, which the court has as Appendix A, there's a spot for the state court in the predicate offense to mark whether or not there was an interpreter, and if so, the name of the interpreter. And it's blank. There was no interpreter for Bernardo Moreno-Gonzalez. Whereas Juan Barrera-Gonzalez speaks only Spanish and had interpreters throughout. And this is clear from the PSR at page 2, lines 32 through 36, that he was interviewed in Spanish. And I can submit the supplemental excerpts of records. It's in the record, but I think not the excerpts, and I can supplement it. But at every hearing, I believe it's very clear on the record he had a Spanish interpreter, as well as in the psychiatric reports, two of which, three of which, Judge Gonzalez had, that he was always a Spanish speaker. So there's further discrepancies. And once again, if we'd only had a little more notice and timeliness, I should have been able to develop that further in the district court, and I apologize that I can develop that further. But there certainly were discrepancies that we labored to bring to Judge Gonzalez's attention that was not done in Romero-Lindon and not done in Marin-Credo. Well, we'll give you a minute for rebuttal. Good morning, Your Honors. May it please the Court, Mark Rahe for the United States. Your Honors, as Judge Pius pointed out, in Romero-Lindon, this Court laid down a principle, said that a PSR by itself that's not controverted by other evidence can stand by itself as clear and convincing evidence of sentencing enhancement. What the defendant has done in this case is no different than what the defendant did there. There's a difference between simply objecting to the sufficiency of a PSR, which is exactly what happened in Romero-Lindon. I have this opinion, the 220F3rd, at I believe page 1160. It says Romero-Lindon objected both prior to and at sentencing. And when we look at the record here, the only objection in the record is at excerpts of record page 2 where the defendant says, I have no documentation, I object to the criminal history because it's insufficient evidence. That's the only evidence, that's the only challenge that he made. He didn't put in any actual evidence himself. And this is a quote from Romero-Lindon, the 220F3rd at 1163 note 4. I'm sorry, 11 what? 1163 footnote 4, Romero-Lindon. It says, quote, where a defendant has put forward no evidence, uncontroverted evidence introduced by the government may be clear convincing proof of the matters asserted. But, Your Honors, we're not relying solely on that principle. We did way more than that here. We didn't just rely on the PSR. There was at least six or seven different other facts that were reduced at the sentencing hearing that the district court correctly relied on. First, the probation officer attested at that hearing that when she ran a database check through the computerized criminal histories for Juan Barrera-Gonzalez, this 1999 prior conviction, even though it was under the name Bernardo Moreno-Gonzalez, was on his rap sheet. So it's not like she went to some separate record. She ran the rap sheet for this particular defendant. Two, this probation officer further attested that these convictions are compiled on FBI and NCIC rap sheets based on fingerprint comparisons. And we have that at excerpt of record, page 16, quote, once they, meaning the FBI, have their fingerprints, they match the same fingerprints. And also at excerpt of record, page 17, the court asks, and so what does that indicate to you, that the fingerprints were compared and it's the same person? The probation officer responds, correct. At no point in the sentencing hearing did the defense ever object to that testimony. At no point in the sentencing hearing did the defense ask to put the probation officer under cross-examination or under any further inquiry as to the fact of that matter. That said, the district court properly relied on that attestation, and as it's well settled in the annals of the law, that fingerprints are a longstanding, reliable form of identification, and we cited cases for that. Third, as we pointed out in our brief, it is a matter of law that FBI rap sheets are compiled based on fingerprints, and that's found in Chapter 28 of the Code of Federal Regulations, Section 16.31, which states that agencies submit fingerprints, and that is how these rap sheets are compiled. Fourth, the record below contained an actual fingerprint card for this defendant. It's in Appendix A to his brief, and it was taken on April 27, 1999, the same date that this conviction was entered, and it was from San Joaquin County. And the district court relied on that. And from that card, the district court could reasonably defer that fingerprints were, in fact, submitted to the FBI and NCIC. Why don't you wrap it up? Oh, I'm almost there, Your Honor. Fifth, I'd say this Court has already recognized in Romero-Rendon and Moran-Cuevas that computerized criminal histories are a reliable source of information. I know that in his presentation, defense counsel said, well, in one of those cases, there's a footnote that the defendant didn't challenge the reliability of the computerized databases. That may be true, but I would point out that in making the holding that the courts did in those cases, they still necessarily had to find that those computerized databases were reliable. And why do we know that? Because the claim in that case was that there was no documentation for those underlying priors. And the defendant said, so all we have is the probation officer's statement that they checked a computerized criminal history. In both of those cases, this Court affirmed the sentencing enhancement. And they said, and there are quotes, that these are a reliable source of information. And, in fact, in Moran-Cuevas. Okay. Well, we got your argument. All right. Okay. Thanks. Your Honor, if I might make one more point, I'm sorry. And I – because this is something that I think I noticed this. I guess you won't sleep tonight. I won't. I'm sorry. I came up here. If you look at the felony sentencing minutes and if you look at the abstract of judgment in the Appendix A, it gives a date of birth. This is something that apparently escaped both us and the defense in the court below. It says August 20th, 1961. The same date of birth that's on the PSR. And even if the court below didn't rely on that, it's well settled that this Court can affirm on any basis having support in the record. The fact that they have the same date of birth, if that's not convincing proof of identity, I submit. Hold on one second, Barry, just before you finish. Since you came all the way up here from San Diego. Turning to the other point, the modified, you know, tailor or categorical approach to the underlying conviction for 11351, health and safety codes. Is the documentation sufficient to establish that he pled guilty to possession for sale? Yes, it is, Your Honor. And I'll make this quick. We know that this Court denied a motion for judicial notice of the transcript. So what do we have? Right there. The complaint, we have the charging document, we have the abstract of judgment. In the case of United States v. Velasco Medina, this Court held that that was sufficient to prove the underlying conviction. Why? So long as the complaint is well pled and it contains all the elements of the offense, and so long as the abstract or the judgment shows a guilty plea to that count, that's all you need, because it's based on a subtle principle law that goes back at least 50 years that a guilty plea admits all factual allegations in the complaint. This complaint, I know that the dispute is, well, is it possession for sale or purchase for purpose of sale? The complaint makes no mention of that. Possession for sale. Exactly. There is never any mention of purchase for sale. So what are the facts? It says that he possessed heroin on April 27, 1999, with the intent of purpose of sale, and that he did so willfully and unlawfully. And I know there's a 28J letter that was delivered to my office yesterday. I don't know if this Court received it. Got it. Defense takes issue with the abstract of judgment, and I have a response to that. First off, in Navidad-Marcos, the Court did not say that abstracts of judgment are henceforth impermissible in every case. They simply said that on the facts of that case, it didn't help show what the defendant proved or what he pled guilty to. And there's a very good reason for that. The statute in that case was a different one. I believe it was Health and Safety Code 11379, which is identical in every word, I believe, except it uses controlled substance instead of marijuana, to another statute, 11360. This Court, in 2001, in an en banc decision in the United States v. Rivera-Sanchez, found that 11360 does not facially qualify as an aggravated felony because it has too many conducts. I think let's say it has eight different kinds of conduct, one of them a sale of drugs, another one is transportation. It said it could transportation of personal use, so therefore, we don't know what exactly it was. This Court knows charging documents can come in one of two ways. If there's – if a particular statute covers many different kinds of conduct, the prosecutor is going to do one of two things. He's either going to elect the conduct he chooses to prove, or he's going to allege it all in the disjunctive. In Navidad-Marcos, they allege everything in the disjunctive. And that's why, when you have the abstract there and it said pled guilty to count one, well, maybe it was transportation. Maybe it was possession per sale. They don't have that problem here. There's only one act that's alleged possession per sale. And finally, I'll point out the Navidad-Marcos. It doesn't overrule Velasco-Medina. It doesn't mention it. It doesn't limit it. And finally, at Excerpt to Record 21, defense counsel conceded below, quote, I agree that the abstract and complaint are judicially noticeable. I'm sorry. Okay. All right.  Briefly, Your Honor. On the identification issue and what we contested, just you can look at the Excerpt to Record, page 17, where I clearly said that there's no evidence that we contested the identification issue. The government seemed to indicate you could look in vain through the excerpt. But in glancing through it, I found page 17 at a minimum. On the categorical analysis on the second stage, Taylor, briefly, obviously, we do think Navidad-Marcos. And I agree with the government. It doesn't say you can never look to an abstract of judgment. But what we know in this case is that Sandoval-Venegas, this Court's opinion there, points out quite wisely that a complaint doesn't tell you what was pled to. You can't rely on just a complaint. And now Navidad-Marcos, a more recent case, tells us you can't really look at the abstract of judgment to tell you what was pled to either. And in this case, we only have those two things and one thing in between. We have the felony sentencing minutes, which is something that wasn't in Navidad-Marcos and something that wasn't in Sandoval-Venegas. And what the felony sentencing minutes tell us here only is the code section, H.S. 11351, and that allegations were stricken. And so I think this case is sort of in between Sandoval-Venegas and Navidad-Marcos. But the result, obviously, is the same one that was compelled in Navidad-Marcos, which is the remand for resentment. All right, thanks. The matter will stand submitted. And we'll take up.
judges: Pregerson, Tashima, Paez